**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**at PIKEVILLE**

**CIVIL ACTION NO. 06-30-DLB**

**MINADA WEBB**                                                                                              **PLAINTIFF**


**vs.**                                            **MEMORANDUM OPINION & ORDER**


**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                        **DEFENDANT**


* * * * * * * * * * * * *

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review

of an administrative decision of the Commissioner of Social Security.  The Court, having

reviewed the record, will affirm the Commissioner's decision, as it is supported by

substantial evidence.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Minada Webb filed her applications for Disability Insurance Benefits (DIB)

and Supplemental Security Income (SSI) on July 15, 2003. (Tr. 49-51, 416-20)  Plaintiff

alleges she became unable to work on July 31, 2001, due to degenerative disc disease,

arthritis, hypertension, and depression and panic attacks. (Tr. 40, 429, 444)  The claim was

denied initially (tr. 35-38, 40-42) and on reconsideration (424-27, 429-32).  At Plaintiff's

request, an administrative hearing was conducted on April 12, 2005, in Lexington,

Kentucky, by Administrative Law Judge (ALJ) Richard C. Bentley. (Tr. 439-69)  On May 26,

2005, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB or SSI

payments. (Tr. 17-25) This decision became the final decision of the Commissioner when the Appeals Council denied review on December 29, 2005. (Tr. 9-11)

On February 2, 2006, Plaintiff filed the instant action.  The matter has culminated in cross motions for summary judgment, which are now ripe for adjudication.

## II.  DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d

469, 474 (6th Cir. 2003); *Preslar v. Secretary of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. 18)  At Step 2, the ALJ found that Plaintiff's post-traumatic stress disorder, depression, degenerative joint disease of herleft knee, hypertension, left ear hearing loss, moderate obstructive sleep apnea, and spasms in her lumbar/thoracic paraspinal area to be severe impairments within the meaning of the regulations.  (Tr. 20)  At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (*Id.*)

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform light and sedentary work with a ten pound lifting limit and a sit/stand option for frequent position changes.  He further found that she is unable to operate foot controls. He also restricted her from jobs requiring response to sounds or money handling.  As for limitations resulting from Plaintiff's mental impairments, the ALJ found Plaintiff to be restricted to simple, repetitive low stress work with no public contact or working in crowds such as a mall or store, and jobs that provide a stable work environment. (Tr. 21) The ALJ also adopted the limitations opined by Plaintiff's treating psychologist as part of her RFC. (*Id.*)  These limitations are:

- A "good" (meaning ability to function in this area is limited, but satisfactory) ability to follow work rules; relate to co-workers; and maintain personal appearance.

- A "fair" (meaning ability to function in this area is seriously limited, but not precluded) ability to interact with supervisors; deal with work stresses; function independently; maintain attention and concentration; understand, remember, and carry out detailed, but not complex, job instructions, as well as simple job instructions; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability.

- And a "poor or none" (meaning no useful ability to function in this area) ability to deal with the public; use judgment with the public; and understand, remember, and carry out complex job instructions.

- Other work-related activities affected are driving and poor concentration/attention for sustained periods of time.

(Tr. 352-53)

Based upon this RFC, the ALJ determined that Plaintiff is unable to perform her past relevant work. (Tr. 22)  Accordingly, the ALJ proceeded to the final step of the sequential evaluation.

At Step 5, the ALJ found that there were a significant number of jobs available to Plaintiff in the national and regional economies, despite her limitations. (Tr. 23) This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age (44 at the time of hearing and decision and so a "younger" individual), education (high school), past relevant work experience (no transferable skills or transferability not in issue), and RFC.  The VE testified that Plaintiff could obtain employment at both the light and sedentary exertional levels performing bench assembly jobs and inspector/tester/checker jobs.  (Tr. 461-62) The ALJ, in his decision, concludes that these positions exist in significant number in both the regional and national economies, according to the VE's testimony. (Tr. 23, 25) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act. (Tr. 25)

### C.     Analysis

Plaintiff raises two challenges in her appeal.  First, she maintains that the ALJ's RFC determination is not supported by substantial evidence, thereby rendering the hypothetical posed to the VE fatally flawed.  Second, she contends that the ALJ failed to give proper weight to the opinions of Dr. Stephen Lamb, the consultative examiner.  However, neither of these points amounts to reversible error.

The ALJ's RFC determination was previously set forth hereinabove at pages 3-4. Plaintiff argues this RFC is not supported by substantial evidence because the ALJ failed to comply with SSR 96-8p.  That is, he made no findings as to the requirements of light and sedentary work, offered no findings about her function-by-function work-related abilities, failed to discuss her ability to perform sustained work activities in an ordinary work setting on a continuing basis, and failed to describe the maximum of each work-related activity that she can perform.

As noted in its prefatory language, Social Security Ruling 96-8p was enacted to clarify the Social Security Administration's policies and interpretations regarding the assessment of a disability claimant's RFC.  Subsection (4), on which Plaintiff relies, states, "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities *on a function-by-function basis*, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945...."  SSR 96-8p (emphasis added).  Those functions include a claimant's: 1) physical abilities, such as sitting, standing, walking, lifting, carrying, pushing and pulling; 2) mental abilities, such as understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures in a work setting; and 3) any other abilities

affected by his/her impairment(s).  20 C.F.R. §§ 404.1545 and 416.945.  Only after an ALJ

has performed this function-by-function evaluation may a claimant's RFC be expressed in

terms of sedentary, light, or heavy work.  SSR 96-8p(4).  However, the ruling also notes

that when there is no subjective allegation or objective evidence of a physical or mental

limitation or restriction of a specific functional capacity, the adjudicator must consider the

claimant to have no such limitation or restriction.  SSR 96-8p(3).

The Sixth Circuit addressed the nature and extent of the analysis required under

SSR 96-8p in *Delgado v. Comm'r of Social Security*, 2002 WL 343402, at *4 (6th Cir.

Mar. 4, 2002).  There, the plaintiff claimed on appeal that the ALJ's decision did not comply

with the ruling's requirements.  *Id.*  She argued, much like Plaintiff does here, that SSR 96-

8p required the ALJ to include a function-by-function discussion of her maximum capacity

to perform each work-related activity.  *Id.*  In support, the plaintiff relied on the Tenth

Circuit's decision in *Diggdon v. Apfel*, 1999 WL 617702, at *2 (10th Cir. Aug. 16, 1999)

(unpublished table decision).  In *Diggdon*, the court reversed and remanded the case based

on the ALJ's failure to clearly indicate whether he had considered the claimant's ability to

meet each of the seven strength demands of SSR 96-8p in determining that she had the

RFC for light work.  *Id.* at *3.

In *Delgado*, however, the Sixth Circuit adopted a more commonsense approach,

stating, "[a]lthough SSR 96-8p requires a 'function-by-function evaluation' to determine a

claimant's RFC, case law does not require the ALJ to discuss those capacities for which

no limitation is alleged."  *Delgado*, 2002 WL 343402 at *4 (*citing Bencivengo v. Comm'r of

Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000).  In *Bencivengo*, the

Third Circuit distinguished between what an ALJ must consider and what an ALJ must

discuss in a written decision.  In particular, the court noted that the ALJ need not decide or discuss uncontested issues,"the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."  *Id.* at *5 (citing *Bencivengo,* slip op. at 4.).  With that legal framework in mind, the Sixth Circuit concluded that the ALJ properly discussed the medical and other evidence on the disputed issues and adequately explained the basis for his RFC determination.

In this case, after his complete review of the record, the ALJ found that exertionally Plaintiff had the RFC to perform light and sedentary work, with a ten pound lifting limit and a sit/stand option with frequent position changes, and an inability to operate foot controls. (Tr. 24) In reaching this determination, the ALJ considered the objective medical findings, the testimony of the VE, and the relevant subjective factors, including Plaintiff's activities and overall credibility.

While Plaintiff complained of back, neck and knee problems, the laboratory findings were normal or unremarkable on objective testing.  (Tr. 173-75, 188, 193, 220) The Physical Residual Functional Capacity Assessments in the case record opined Plaintiff is capable of medium level work, being able to lift/carry 50 pounds occasionally and 25 pounds frequently, unlimited pushing and/or pulling (including operation of hand and/or foot controls), and ability to stand and/or walk, or sit, for up to 6 hours in an 8-hour workday, the maximum time block allotted on the Assessment form. (Tr. 253-62, Dr. David Swan; 340-45, Dr. J.E. Baez-Garcia).  At hearing, Plaintiff testified that she is able to lift a gallon of milk. (Tr. 449) She also testified that standing or sitting *too long* becomes painful (tr. 452) and that she can stand for 15 to 20 minutes *before needing to change positions* and sit for

15 to 20 minutes *before needing to change positions* (tr. 446).  She now basically spends most days sitting and watching television. (Tr. 448, 450) The language of SSR 96-8p as well as the ruling in *Delgado* make clear that an assessor should use all of the evidence in the record in determining a claimant's RFC.  The evidence noted above and discussed by the ALJ in his decision supports the ALJ's determination of Plaintiff's RFC.

The state agency physician assessments were actually less restrictive than that determined by the ALJ, in that they found Plaintiff was not limited in her standing, walking, or sitting, nor that she required a sit/stand option.  Based on all of the evidence, the ALJ, on the other hand, concluded she needed to have a sit/stand option with frequent position changes.  Given her knee complaints, he also concluded she should not operate foot controls.  And while the state agency physician assessments indicated a much higher weight limit, the ALJ restricted her lifting to a maximum of 10 pounds.  As for delineating other functional specifics, such as sitting, standing, or carrying, the record is devoid of any medical or other evidence that Plaintiff's exertional capacity to perform these work-related functions is impaired other than as found by the ALJ.  Therefore, contrary to Plaintiff's assertions, the ALJ was not required to address each of these demands of SSR 96-8p in his written decision.  *Delgado,* 2002 WL 343402, at *4.  Thus, the ALJ's RFC opinions with respect to Plaintiff's physical/exertional abilities were reasonably based on substantial evidence.

With respect to Plaintiff's non-exertional (i.e., mental) capacity, the records reflects the ALJ considered Plaintiff's testimony and discussed the treatment and opinions from each of the mental health providers or evaluators, being Dr. Lamb, Dr. Granacher, and Psychologist Amburgey. (Tr. 19) Based upon this evidence, the ALJ concluded that she

would be restricted to simple, repetitive low stress work with no public contact or working in crowds, requires a stable work environment, and also expressly incorporated the limitations of Psychologist Amburgey. (Tr. 21) Those limitations are directed to mental work-related activities such as ability to follow rules, relate to co-workers, maintain personal appearance, interact with supervisors, deal with work stress, function independently, maintain attention and concentration, process job instructions, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and ability to use judgment with the public. (Tr. 19-20) These are precisely the types of functions an adjudicator is required to consider under SSR 96-8p.

To the extent Plaintiff protests that the ALJ failed to properly include the limitations of Psychologist Amburgey, this argument is unfounded.  The ALJ expressly stated in his written decision (tr. 21) and findings (tr. 24) that he deemed these limitations a part of Plaintiff's RFC; therefore, he incorporated them by express reference.  In posing hypotheticals to the VE, the ALJ also informed the VE that those limitations should be considered in responding to the hypothetical. (Tr. 460) If there was any confusion about whether the VE included those limitations opined by Psychologist Amburgey, counsel cleared up the confusion in his follow-up questioning of the VE specifically on those limitations. (Tr. 463-65) Indeed, upon counsel's clarifying the definitions of "good," "fair," and "poor" employed by Psychologist Amburgey in making her assessment, the VE indicated that approximately 60% of the inspecting jobs available to Plaintiff would be eliminated (tr. 464), although other light and sedentary work in significant numbers remained.  Given these circumstances, the ALJ's inclusion and discussion of Psychologist

Amburgey's opinions were adequate for the purpose of setting forth Plaintiff's RFC and presenting that RFC, along with vocational factors, to the VE.

One final note on this first appeal issue.  Plaintiff complains the RFC was inadequate because it did not include *all* of the limitations opined by the state agency physicians and psychologists.  However, the ALJ was under no statutory or regulatory obligation to so include each and every restriction or limitation opined by them.  Rather, the ALJ clearly explains in the decision that because these opinions were rendered by nonexamining experts, they are not entitled to controlling weight, though they are given due consideration and weight.  He characterizes this evidence as *supporting* his conclusion already preliminarily reached thereinabove that Plaintiff is not disabled.  He does not state that he is adopting these opinions outright as Plaintiff's RFC, nor should he do so given the standard applied to nonexamining expert opinions.

Plaintiff's second issue presented in this appeal is that the ALJ failed to give "proper weight" to Dr. Stephen Lamb's opinions.  The decision reflects the ALJ noted and discussed the findings and any formal opinions rendered by Michele Amburgey, Plaintiff's treating psychologist; Dr. Stephen Lamb, who examined Plaintiff on behalf of the Administration; and Dr. Robert Granacher, who examined Plaintiff at her counsel's request. (Tr. 19) The ALJ simply determined that Psychologist Amburgey's opinions in particular, and to some extent Dr. Granacher's examination findings and impressions, were more consistent with the case record as a whole than were those of Dr. Lamb. (Tr. 21)

It is the function of an ALJ to evaluate a claim based upon the record compiled in connection with an application.  *See* 20 C.F.R. §§ 404.1520 and 416.920.  This includes evaluating medical proof.  *Id.* §§ 404.1527 and 416.927; *Webb v. Comm'r of Social*

*Security,* 368 F.3d 629, 633 (6th Cir. 2004)("ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [ ] residual functional capacity")(internal quotation omitted).  It is the ALJ's responsibility to weigh the medical evidence if conflicting medical opinions have been presented.  *See McCann v. Califano,* 621 F.2d 829, 832 (6th Cir. 1980); *Ziegler v. Sullivan,* 894 F.2d 1337, 1990 WL 6954, at *4 (6th Cir.)(unpublished table decision).

Thus, it is a part of the ALJ's role and function to evaluate medical proof so as to determine disability.  That is precisely what the ALJ did here in evaluating the medical proof as to Plaintiff's mental impairments.  Indeed, the ALJ actually adopted the opinions of Plaintiff's treating psychologist, and gave weight to her chosen evaluating psychiatrist. While she seeks to have the opinions of agency psychiatrist Dr. Lamb given more deference likely because they are more restrictive, Plaintiff cites no legal authority or factual basis that would have compelled the ALJ to do so.  The opinions of Dr. Grancher, and the opinions and ongoing treatment of Psychologist Amburgey, were more recent and more consistent with the overall evidence, as so concluded by the ALJ.  As a one-time examiner, Dr. Lamb's opinions were not entitled to more weight or deference than those of Psychologist Amburgey.  Plaintiff will not now be heard to complain that essentially the treating physician rule should not apply.  This argument is without merit.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #11) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 30th day of March, 2007.



Signed By:

_David L. Bunning_  DB

**United States District Judge**

G:\DATA\SocialSecurity\MOOs\7-06-30-Webb.MOO.wpd